## Securities Issued by Insurance Companies

CREAMER, Attorney General, January 31, 1972.— You have both requested our opinion as to whether securities issued by insurance companies need be registered with and approved by the Pennsylvania

Securities Commission. The Insurance Department takes the position that since it regulates, in certain respects, the issuance of stock by insurance companies, the Securities Commission has no right to regulate such issues. The Securities Commission takes the position that since the Securities Act does not exempt such securities, they are subject to its regulation. The pertinent statutory provisions follow, all emphases are supplied:

The Insurance Company Law of May 17, 1921, P.L. 682, 40 PS §361, et seq., contains the following provisions:

1. §215(a), 40 PS §405(a):

"As soon as the entire amount of the authorized capital of a stock insurance company, incorporated under this act, has been paid in, *certificates shall be issued therefor to the persons entitled to receive the same, which certificates shall be transferable upon the books of the company;* and the president or secretary of the company shall notify the Insurance Commissioner that the entire capital and paid in surplus of the company has been paid in, and that it is ready to commence business." (Italics supplied.)

2. §§323 through 325, 40 PS §§446-448, give a stock insurance company the power to increase its capital stock under certain circumstances and provide the procedure. §326, 40 PS §449, then provides:

"Any increase of capital stock made by any stock insurance company *may be issued* at such price not less than par as the stockholders may direct, or as the board of directors may direct under authority conferred at any time by the stockholders . . . Unless otherwise provided, in the charter or articles of agreement, each stockholder shall have the right to first subscribe for the new shares in proportion to his interest in the company; Provided, That in any case no

stockholder shall have such right to first subscribe for new shares if the stockholders holding the larger amount in value of the stock of the company direct, subject to such equitable regulations as the directors may prescribe, that such new shares shall be issued in exchange for one or more bona fide outstanding shares of another insurance company in which the issuing company is authorized to invest, or partly in such exchange and partly in cash . . . *and such exchange shall be approved by the Insurance Commissioner, as hereinafter provided.*

"The *Insurance Commissioner* shall examine the terms and conditions of such exchange and after holding a hearing at which all persons or parties to whom it is proposed to issue shares in such exchange shall have the right to appear, shall either approve or disapprove the fairness of such terms and conditions.

"Except when such an exchange is to be effected, notice to the stockholders to exercise their rights to subscribe for and to take the stock at the price so fixed or waive such right, shall be mailed to each stockholder, at the last address of such stockholder, appearing on the books or records of the company, thirty days previous to the date fixed by the board of directors for the expiration of the right to subscribe, and shall also be given by publication, once a week for three (3) weeks in a newspaper of general circulation published in the city or county in which the company has its principal office.

"*Any stock not subscribed for and taken by the stockholders may be sold and disposed of by the board of directors, in such manner as the stockholders may direct,* but no such stock shall be sold or disposed of at a price less than that originally fixed by the stockholders.

"Anything in this section to the contrary notwith-

standing, any stock insurance company may issue to its officers or employes or to the officers or employes of any subsidiary corporation or to a trustee on their behalf, such number of its authorized but unissued shares as shall be prescribed by the stockholders having the majority interest. Such shares shall be issued at such times and upon such terms and conditions and in such manner as shall be determined by the board of directors.

"Any such stock authorized to be issued to officers or employes and not taken by those entitled thereto may be sold and disposed of in such manner as the board of directors may determine." (Italics supplied.)

The Insurance Department points to §215, which empowers the representatives of the Insurance Commissioner to examine the company and require that it be possessed of funds as claimed before it may begin to write insurance, and to the requirements of §§323-326, which allow sale of stock after certain approvals by the Insurance Department; it also correctly observes that nothing in the Insurance Company Act requires additional approval by the Securities Commission. The Insurance Department further states that it makes a careful examination of the financial position of an insurance company before it will allow it to operate.

3. The Insurance Department might also point to the Act of July 11, 1917, P.L. 804, 40 PS §§390-399, which regulates the sale of stock of an insurance company and provides in §8, 40 PS §397:

"No person shall issue, deliver, circulate, or publish in this State any advertisement in any newspaper or periodical published in this State, or any circular or prospectus, for the sale of stock of any insurance corporation, whether organized or proposed to be organized within or without this State, for the purpose

of soliciting or securing applications or subscriptions to, or contract for the purchasing of stock in, any such corporation unless—

"(a) *A copy of such circular, prospectus, or other advertisement shall first have been filed in the office of the Commissioner of Insurance:* .

"(b) The same shall contain the name and address of the person issuing, delivering, circulating, or publishing the same, with a consecutive serial number for each separate form of such circular, prospectus or other advertisement." (Italics supplied.)

The Pennsylvania Securities Act of June 24, 1939, P. L. 748, as amended, 70 PS §31, et seq., on the other hand, provides that no "dealer" who is not registered under the act may sell any "security."

The act defines "dealer" as "any person other than a salesman who engages in this State, either for all or part of his time, directly, or through an agent who is not registered hereunder as a dealer, in selling securities issued by another person," or in "selling securities issued by such person": 70 PS §32(f). "Person" includes "a company," (70 PS §32(c) ) and "company" means "a corporation, joint stock company, partnership, association, company, syndicate, trust, or unincorporated organization": 70 PS §32(e).

"Security" is defined as "any bond, stock, collateral trust certificate, transferable share, investment contract, certificate under a voting trust agreement, treasury stock, note, debenture, certificate in or under a profit sharing or participation agreement, subscription or preorganization certificate, fractional undivided interest in oil, gas, or other mineral rights, evidence of indebtedness, certificate of deposit for a security, certificate or instrument representing or secured by an interest in the capital assets or property of a company, other instrument commonly known as

a security, or certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing": 70 PS §32(a).

The act contains no exclusion or exemption for insurance companies or organizations, although it does contain other exemptions from the definition of "dealer," including "sales *to* insurance companies authorized *by the Insurance Commissioner* to carry on an insurance business within this State, banks or to persons registered hereunder": 70 PS §32(f)(5); "the issuance and sale of its own stock by a building and loan association organized under the laws of this State": 70 PS §32(f)(15); and the "issuance and sale of its own securities by a corporation not organized and *not* engaged in business for profit": 70 PS §32(f)(16).

Upon our review of the foregoing, it is our opinion, and you are so advised, that the issuance of securities by insurance companies and any other companies *regulated by the Insurance Department* does come within the purview of the Securities Act and that all such companies must register with the Securities Commission. All individuals and companies who participate in the distribution of such securities must meet the "dealer" and "salesman" registration requirements of the Pennsylvania Securities Act. The Securities Act is all pervasive and we hold that the definition of "person" is broad enough to include insurance companies. There is no exemption of insurance companies, even though the Legislature enacted 17 other specific exemptions which include the stock of a building and loan association and stock sold *to* insurance companies as authorized by the Insurance Commissioner. Accordingly, it is clear that the legislature knew how to exempt a specific type of company when it wished to do so and that it considered the

specific problem of insurance companies. Moreover, the Securities Act has been amended at least twice since 1959 without a specific exemption of insurance companies.

It is true that the Insurance Company Act does contain several provisions indicating when an insurance company may sell its stock; but this in no way limits the right and duty of the Securities Commission to also regulate the sale of such stock. The Insurance Company Act is concerned with the requirements which an insurance company must meet in order to issue insurance policies which will protect policyholders; the Securities Commission is concerned with making sure that investors in the company are not misled by improper representations. Just because the Insurance Commissioner does his duty, and does it well, will not protect an investor from being subjected to misrepresentations in the sale of securities, misrepresentations which the Securities Act is designed to prevent. Even the Act of July 11, 1917, P. L. 804, 40 PS §§390-399, which predated the general regulation of securities by a general securities or "Blue Skies" law, requires only that a prospectus be filed with the Insurance Department. The department is not required to review prospectuses in order to require full and fair disclosure or to consider these securities offerings as an investment. The Insurance Department argues that none of the statutory provisions which govern its power over securities mentions concurrent regulation by the Securities Commission. But that is not the legislative scheme. Regulation by the Securities Commission is found only in the Securities Act and includes *all* securities except those specifically exempted. The legislature did not need to make specific provisions in the Insurance Company Law; it had done so clearly in the Securities Act.

We are confirmed in our analysis by Official

Opinion No. 236 of the Attorney General, dated March 2, 1961, where the question was whether a company engaged in the business of issuing variable annuities, life insurance, and disability insurance in combination is an insurance corporation within the meaning of the Act of July 11, 1917; and whether the provisions of the act apply to a corporation making a second offering of stock or a new issue several years after it had commenced doing business. The opinion answered "yes" to both questions. After analyzing the Act of 1917 as being passed to protect Pennsylvania investors from overreaching by the promoters of insurance companies prior to the enactment of a Blue Skies Law, the opinion held, Official Opinions of the Attorney General, 1961-62, pages 17-18:

"We are therefore of the opinion and you are accordingly advised that a company which sells variable annuity insurance contracts is an insurance corporation within the meaning of the Act of July 11, 1917, and *must comply with the provisions of that act and such other acts of the Commonwealth of Pennsylvania (The Pennsylvania Securities Act of July 10, 1941, P. L. 317, as amended)* as are pertinent thereto, *before it may offer its stock* (whether it be original issue or subsequent issue) or variable annuities for sale in Pennsylvania. *We do not intend that this opinion be construed to give authority to any company to offer for sale securities,* whether they be its stock or variable annuity contracts, in the Commonwealth of Pennsylvania *without prerequisite compliance with the provisions of The Pennsylvania Securities Act, as amended, supra.*" (Italics supplied.)

We note that legislation covering variable annuities was passed after that opinion (Act of August 24, 1963, P. L. 1194, 40 PS §506.2), which was amended by the Act of January 19, 1968, P. L. 1020, to provide that

annuities issued thereunder ". . . shall not be subject to . . . 'The Pennsylvania Securities Act,' or to regulation by the Pennsylvania Securities Commission,": 40 PS §506.2(j). This legislation in no way detracts from Opinion No. 236, which was applicable to all securities issued by insurance companies. Moreover, it is but another indication of the Legislature's method of stating clearly when it intends to exempt a type of security from regulation by the Securities Commission, an intention it has failed to manifest in connection with other securities issued by insurance companies even when confronting the issue in connection with variable annuities.

To implement this decision effectively, we urge that the Insurance Department and Securities Commission jointly publicize our opinion and make it known to insurance companies, certain of which are apparently under the impression that they are not subject to regulation by the Securities Commission. Additionally, continuing the cooperation which has been evident in the past between the Insurance Department and Securities Commission, and in accordance with §§501 and 502 of the Administrative Code of 1929, 71 PS §§181-182, the Insurance Department shall notify the Securities Commission whenever the prospective issuance of a security by an insurance company comes to its attention; and forward to the commission any prospectus, offering circular, brochure, or other solicitation materials to be used by such insurance company in connection with the sale or offer for sale of securities in Pennsylvania, all of which must comply with the requirements of the Securities Commission. The Insurance Department, in accordance herewith, shall not give its final approval to the issuance of any securities by an insurance company until it is notified by the Securities

Commission that the proposed issue has met all the requirements of the Securities Act.

In conclusion, we stress that our opinion is in no way intended to intimate that the Insurance Department is not capable of carrying out its duties or that it is not doing so. We believe that the legislature has recognized two separate duties and created two separate agencies to carry them out. We are convinced that each does and will continue to perform these duties in an excellent manner to further the public interest.